1   **KABATECK BROWN KELLNER LLP**
    Brian S. Kabateck (State Bar No. 152054)
2   Richard L. Kellner (State Bar No. 171416)
    Lina B. Melidonian (State Bar No. 245283)
3   644 South Figueroa Street
4   Los Angeles, California 90017
    Tel: (213) 217-5000 / Fax: (213) 217-5010
5
6   **MILSTEIN ADELMAN, LLP**
    PAUL D. STEVENS (State Bar No. 207107)
7   pstevens@milsteinadelman.com
8   2800 Donald Douglas Loop North
    Santa Monica, California 90405
9   Telephone (310) 396-9600

10

11              **IN THE UNITED STATES DISTRICT COURT**

12        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13  CELESTE PLUCHA an individual;        Case No. CV13-8809 CFMC(PJWx)
    AUTUMN TINCHER, an individual;
14  ASHLEY RIOS, an individual; ANNA      COMPLAINT-FOR:
15  SCHAEFFER, an individual;
    ESMERELDA GARCIA, an individual;      (1)   DEFECTIVE
16  JACQUELINE MARTINEZ, an                     MANUFACTURING
17  individual; ALEXIS FOYT, an           (2)   DESIGN DEFECT
    individual; AMY FEDOR, an individual; (3)   NEGLIGENCE
18  JANVIERE HARRIS, an individual;       (4)   FAILURE TO WARN
    TRACEY DRAGON, an individual;         (5)   STRICT LIABILITY
19  SONYA WATSON, an individual;          (6)   BREACH OF IMPLIED
20  AMANDA FRALIX, an individual;               WARRANTY
    LATONYA LANGSTON, an individual;      (7)   BREACH OF EXPRESS
21  and BROOKE LARRIMORE, an                    WARRANTY
22  individual;                           (8)   NEGLIGENT
                                                MISREPRESENTATION
23              Plaintiffs,               (9)   FRAUDULENT
                                                MISREPRESENTATION
24        vs.                            (10)   FRAUD BY
25                                              CONCEALMENT
    BAYER HEALTHCARE
26  PHARMACEUTICALS, INC., DOES 1-
27  10.
28              Defendants.               JURY TRIAL DEMANDED

                                1
                            COMPLAINT

## INTRODUCTION

Plaintiffs Celeste Polucha, Autumn Tincher, Ashley Rios, Anna Schaeffer, Esmerelda Garcia, Jacqueline Martinez, Alexis Foyt, Amy Fedor, Janviere Harris, Tracey Dragon, Sonya Watson, Amanda Fralix, LaTonya Langston, and Brook Larrimore (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby bring this action against the defendant, Bayer Healthcare Pharmaceuticals, Inc. ("Bayer") for personal injuries suffered as a proximate result of Plaintiffs' use of the defective and unreasonably dangerous product Mirena® (levonorgestrel-releasing intrauterine system). At all times relevant hereto, Mirena® was manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Bayer.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendant is incorporated and has its principal places of business in states other than the states in which the Plaintiffs reside.

2. This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to at least some of Plaintiffs' claims occurred, in part, in the Central District of California and because Defendants transact business in this district.

## PARTIES AND CITIZENSHIP

1. Plaintiff Celeste Polucha is a natural person and a resident and citizen of California City, California.

2.     Plaintiff Autumn Tincher is a natural person and a resident and citizen of Anchorage, Alaska.

3.     Plaintiff Ashley Rios is a natural person and a resident and citizen of Albuquerque, New Mexico.

4.     Plaintiff Anna Schaeffer is a natural person and a resident and citizen of Texarkana, Texas.

5.     Plaintiff Esmerelda Garcia is a natural person and a resident and citizen of Vernon, Texas.

6.     Plaintiff Jacqueline Martinez is a natural person and a resident and citizen of Espanola, New Mexico.

7.     Plaintiff Alexis Foyt is a natural person and a resident and citizen of Nebraska City, Nebraska.

8.     Plaintiff Amy Fedor is a natural person and a resident and citizen of Key West, Florida.

9.     Plaintiff Janviere Harris is a natural person and a resident and citizen of East St. Louis, Illinois.

10.    Plaintiff Tracey Dragon is a natural person and a resident and citizen of Hampton, Virginia.

11.    Plaintiff Sonya Watson is a natural person and a resident and citizen of Sacramento, California.

12.    Plaintiff Amanda Fralix is a natural person and a resident and citizen of Shiloh, Tennessee.

13.    Plaintiff LaTonya Langston is a natural person and a resident and citizen of Dubuque, Iowa.

14.    Plaintiff Brook Larrimore is a natural person and a resident and citizen of Cordova, Maryland.

15.    Defendant Bayer Healthcare Pharmaceuticals Inc., is a corporation organized and existing under the laws of the State of Delaware, having a principal

3

place of business at 6 West Belt Road, Wayne, New Jersey 07470.  Defendant Bayer Healthcare Pharmaceuticals, Inc., can be served with process through its registered agent for service of process in California, Corporation Service Company, 2710 Gateway Oaks Dr, Suite I50N, Sacramento, California 95833.

16.    Defendant Bayer Healthcare Pharmaceuticals, Inc. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc.

17.    Berlex Laboratories, Inc. and Berlex, Inc. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

18.    Defendant Bayer Healthcare Pharmaceuticals Inc. is the holder of the approved New Drug Application (NDA) for contraceptive device Mirena®.

19.    Bayer is in the business of designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing prescription drugs and women's healthcare products, including the intrauterine contraceptive system, Mirena®.

20.    Bayer does business in California through the sale of Mirena® and other prescription drugs in the state.

21.    At all times relevant, Defendant was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the contraceptive device, Mirena®.

## FACTS

22.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

23.    Mirena® is an intrauterine system that is inserted by a healthcare provider during an office visit. Mirena® is aT-shaped polyethylene frame with a

steroid reservoir that releases 20 µg/day of levonorgestrel, a prescription medication used as contraceptive.

24. The federal Food and Drug Administration (FDA) approved Defendants' New Drug Application for Mirena® in December 2000. Today, more than 2 million women in the United States use Mirena®. It has been used by more than 15 million women worldwide.

25. The system releases levonorgestrel, a synthetic progestrogen, directly into the uterus for birth control. Defendants admit it is not known exactly how Mirena works," but provide that Mirena® may thicken cervical mucus, thin the uterine lining, inhibit sperm movement and reduce sperm survival to prevent pregnancy.

26. The Mirena® intrauterine system ("IUS") is designed to be placed within seven (7) days of the first day of menstruation and is approved to remain in the uterus for up to five (5) years. If continued use is desired after five years, the old system must be discarded and a new one inserted.

27. The package labeling recommends that Mirena® be used in women who have had at least one child.

28. Mirena®' s label does not warn about spontaneous migration of the IUS, but only states that migration may occur if the uterus is perforated during insertion of the device.

29. Mirena®'s label also describes perforation as an "uncommon" event, despite the numerous women who have suffered migration and perforation post insertion, clearly demonstrating this assertion to be false.

30. Defendant has a history of overstating the efficacy of Mirena® while understating the potential safety concerns.

31. In or around December 2009, Defendant was contacted by the Department of Health and Human Services' Division of Drug Marketing, Advertising, and Communications (DDMAC) regarding a consumer-directed

program entitled "Mirena Simple Style Statements Program," a live presentation designed for "busy moms." The Simple Style program was presented in a consumer's home or other private by a representative from "Mom Central", a social networking internet site, and Ms. Barb Dehn, a nurse practitioner with Defendants.

32.   This Simple Style program represented that Mirena® use would increase the level of intimacy, romance and emotional satisfaction between sexual partners. DDMAC determined these claims were unsubstantiated and, in fact, pointed out that Mirena®' s package insert states that at least 5% of clinical trial patients reported a decreased libido after use.

33.   The Simple Style program script also intimated that Mirena® use can help patients "look and feel great." Again, DDMAC noted these claims were unsubstantiated and that Mirena® can cause a number of side effects, including weight gain, acne, and breast pain or tenderness.

34.   The portion of the Simple Style script regarding risks omitted information about serious conditions, including susceptibility to infections and the possibility of miscarriage if a woman becomes pregnant on Mirena®.

35.   Finally, Defendant falsely claimed that Defendant's product required no compliance with a monthly routine.

## PLAINTIFF SPECIFIC FACTS

Plaintiff Celeste Polucha

36.   Plaintiff Celeste Polucha had her physician in California insert the Mirena® IUS on or about January 25, 2008.

37.   As a result of Plaintiff Celeste Polucha's use of Mirena® IUS she suffered migration of the IUS that resulted in perforation of her uterus. On or about April 10, 2013, Plaintiff Celeste Polucha's Mirena® IUS was surgically removed due to the migration and because the Mirena® had perforated her uterus. Plaintiff Celeste Polucha continues to suffer from pain and discomfort as a result.

<u>Plaintiff Autumn Tincher</u>

38.     Plaintiff Autumn Tincher had her physician in Alaska insert the Mirena® IUS on or about February 2008 and October 2010.

39.     As a result of Plaintiff Autumn Tincher's use of the Mirena® IUS she suffered migration of the IUS which resulted in embedment of the device.. On or about October 2010 and December 2011, respectively, Plaintiff Autumn Tincher's Mirena® IUS was surgically removed due to the injuries resulting from the migration and embedment. Plaintiff Autumn Tincher continues to suffer from pain and discomfort as a result.

<u>Plaintiff Ashley Rios</u>

40.     Plaintiff Ashley Rios had her physician in New Mexico insert the Mirena® IUS on or about March 2009.

41.     As a result of Plaintiff Ashley Rios' use of Mirena® IUS she suffered migration of the device that resulted in embedment of the IUS and perforation of her uterus. On or about June 7, 2011, Plaintiff Ashley Rios' Mirena® IUS was surgically removed due to the migration, embedment, and perforation of the Mirena®. Plaintiff Ashley Rios continues to suffer from pain and discomfort as a result.

<u>Plaintiff Anna Schaeffer</u>

42.     Plaintiff Anna Schaeffer had her physician in Texas insert the Mirena® IUS on or about March 15, 2010.

43.     As a result of Plaintiff Anna Schaeffer's use of Mirena® IUS she suffered migration of the device that resulted in perforation of her uterus by the IUS. On or about January 26, 2011, Plaintiff Anna Schaeffer's Mirena® IUS was

1   surgically removed due to the migration and perforation of the Mirena®.  Plaintiff

2   Anna Schaeffer continues to suffer from pain and discomfort as a result.

3

4   Plaintiff Esmerelda Garcia

5       44.   Plaintiff Esmerelda Garcia had her physician in Texas insert the \

6   Mirena® IUS on or about August 17, 2009.

7       45.   As a result of Plaintiff Esmerelda Garcia's use of Mirena® IUS she

8   suffered migration of the device that resulted in perforation of her uterus by the IUS.

9   On or about November 29, 2012, Plaintiff Esmerelda Garcia's Mirena® IUS was

10  surgically removed due to the migration and perforation of the Mirena®.  Plaintiff

11  Esmerelda Garcia continues to suffer from pain and discomfort as a result.

12

13  Plaintiff Jacqueline Martinez

14      46.   Plaintiff Jacqueline Martinez had her physician in New Mexico insert

15  the Mirena® IUS on or about September 2, 2010.

16      47.   As a result of Plaintiff Jacqueline Martinez's use of Mirena® IUS she

17  suffered migration of the device which resulted in embedment of the device. On or

18  about December 6, 2011, Plaintiff Jacqueline Martinez's Mirena® IUS was

19  surgically removed due to the migration and embedment of the Mirena®.  Plaintiff

20  Jacqueline Martinez continues to suffer from pain and discomfort as a result.

21

22  Plaintiff Alexis Foyt

23      48.   Plaintiff Alexis Foyt had her physician in Nebraska insert the Mirena®

24  IUS on or about November 17, 2008.

25      49.   As a result of Plaintiff Alexis Foyt's use of Mirena® IUS she suffered

26  migration of the device which resulted in embedment of the device. On or about

27  March 8, 2013, Plaintiff Alexis Foyt's Mirena® IUS was surgically removed due to

28

8

COMPLAINT

the migration and embedment of the Mirena®.  Plaintiff Alexis Foyt continues to suffer from pain and discomfort as a result.

Plaintiff Amy Fedor

50.    Plaintiff Amy Fedor had her physician in Virginia insert the Mirena® IUS on or about April 27, 2006.

51.    As a result of Plaintiff Amy Fedor's use of Mirena® IUS she suffered migration of the device which resulted in perforation of her abdominal cavity. . On or about December 6, 2011, Plaintiff Amy Fedor's Mirena® IUS was surgically removed due to the injuries she suffered from the migration and perforation of the Mirena®.  Plaintiff Amy Fedor continues to suffer from pain and discomfort as a result.

Plaintiff Janviere Harris

52.    Plaintiff Janviere Harris had her physician in Illinois insert the Mirena® IUS on or about February 8, 2006.

53.    As a result of Plaintiff Janviere Harris' use of Mirena® IUS she suffered migration of the device which resulted in embedment.  On or about August 19, 2011, Plaintiff Janviere Harris' Mirena® IUS was surgically removed due to the injuries she suffered from the migration of the Mirena®.  Plaintiff Janviere Harris continues to suffer from pain and discomfort as a result.

Plaintiff Tracey Dragon

54.    Plaintiff Tracey Dragon had her physician in Virginia insert the Mirena® IUS on or about August 18, 2008.

55.    As a result of Plaintiff Tracey Dragon's use of Mirena® IUS she suffered migration of the device that resulted in embedment of the IUS and

perforation of her uterus. On or about August 29, 2008, Plaintiff Tracey Dragon's Mirena® IUS was surgically removed due to the migration, embedment, and perforation of the Mirena®. Plaintiff Tracey Dragon continues to suffer from pain and discomfort as a result.

Plaintiff Sonya Watson

56. Plaintiff Sonya Watson had her physician in California insert the Mirena® IUS on or about September 28, 2010.

57. As a result of Plaintiff Sonya Watson's use of Mirena® IUS she suffered migration of the device which resulted in embedment. On or about February 1, 2011, Plaintiff Sonya Watson's Mirena® IUS was surgically removed due to the migration and embedment of the Mirena®. Plaintiff Sonya Watson continues to suffer from pain and discomfort as a result.

Plaintiff Amanda Fralix

58. Plaintiff Amanda Fralix had her physician in Tennessee insert the Mirena® IUS on or about February 22, 2011.

59. As a result of Plaintiff Amanda Fralix's use of Mirena® IUS she suffered migration of the device which resulted in further injuries to her body. On or about June 1, 2011, Plaintiff Amanda Fralix's Mirena® IUS was surgically removed due to the injuries she suffered from the migration of the Mirena®. Plaintiff Amanda Fralix continues to suffer from pain and discomfort as a result.

Plaintiff LaTonya Langston

60. Plaintiff LaTonya Langston had her physician in Wisconsin insert the Mirena® IUS on or about January 14, 2010.

61. As a result of Plaintiff LaTonya Langston's use of Mirena® IUS she suffered migration of the device that resulted in perforation of her uterus by the IUS. On or about January 18, 2010, Plaintiff LaTonya Langston's Mirena® IUS was

1   surgically removed due to the migration and perforation of the Mirena®. Plaintiff

2   LaTonya Langston continues to suffer from pain and discomfort as a result.

3

4

5   Plaintiff Brook Larrimore

6       62.   Plaintiff Brook Larrimore had her physician in Maryland insert the

7   Mirena® IUS on or about October 8, 2007.

8       63.   As a result of Plaintiff Brook Larrimore's use of Mirena® IUS she

9   suffered migration of the device which resulted in embedment. On or about January

10  18, 2011, Plaintiff Brook Larrimore's Mirena® IUS was surgically removed due to

11  the migration and embedment of the Mirena®. Plaintiff Brook Larrimore continues

12  to suffer from pain and discomfort as a result.

13

14              **FIRST CAUSE OF ACTION:**

15              **DEFECTIVE MANUFACTURING**

16      64.   Plaintiffs incorporate by reference all other paragraphs of this complaint

17  as if fully set forth herein, and further allege as follows:

18      65.   Defendant was and is engaged in the business of selling Mirena® in the

19  State of California.

20      66.   The Mirena® manufactured, designed, formulated, tested, packaged,

21  labeled, produced, created, made, constructed, assembled, marketed, advertised,

22  distributed and sold by Defendant was expected to, and did, reach each of the

23  Plaintiffs without substantial change in the condition in which it was sold.

24      67.   Defendants have introduced a product into the stream of commerce

25  which is dangerous and unsafe in that the harm of Mirena® outweighs any benefit

26  derived therefrom. The unreasonably dangerous nature of Mirena® caused serious

27  harm to Plaintiffs.

28

68.   Defendants manufactured, marketed, promoted and sold a product that was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by the Plaintiffs.

69.   As a direct and proximate result of Plaintiffs' use of Mirena®, they were each forced to undergo surgical removal of the IUS, developed severe pain from the device and had to undergo numerous procedures.

70.   Defendant placed Mirena® into the stream commerce wanton reckless disregard for the public safety.

71.   Defendant knew and, in fact, advertised and promoted the use of Mirena® despite their failure to test or otherwise determine the safety and efficacy of such use.  As a direct and proximate result of the Defendant's advertising and widespread promotional activity, physicians began commonly prescribing this product as safe and effective.

72.   Despite the fact that evidence existed that the use of Mirena® was dangerous and likely to place users at serious risk to their health, Defendant failed to disclose and warn of the health hazards and risks associated with the Mirena® and in fact acted to deceive the medical community and public at large, including all potential users of Mirena® by promoting it as safe and effective.

73.   Defendant knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

74.   There are contraceptives on the market with safer alternative designs in that they provide equal or greater efficacy and far less risk.

75.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiffs suffered profound injuries, required medical treatment, and incurred and continue to incur medical and hospital expenses.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SECOND CAUSE OF ACTION:

## DESIGN DEFECT

76.     Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

77.     Defendants were and are engaged in the business of selling Mirena® the State of California.

78.     The Mirena® manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendant was expected to, and did, reach Plaintiffs without substantial change in the condition in which it was sold.

79.     The foreseeable risks associated with the design or formulation of the Mirena® include, but are not limited to, the fact that the design or formulation of Mirena® is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

80.     Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, istributed and sold a product that was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by Plaintiffs.

81.     As a direct and proximate cause of Plaintiffs' use of Mirena®, she was forced to undergo surgical removal of the Mirena®, developed severe pain, and underwent numerous procedures.

82.     Defendant placed Mirena® into the stream of commerce with wanton and reckless disregard for the public safety.

COMPLAINT

83.   Defendant knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

84.   There are contraceptives on the market with safer alternative designs that they provide equal or greater efficacy and far less risk.

85.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiffs suffered profound injuries, required medical treatment, and incurred and continue to incur medical and hospital expenses.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## THIRD CAUSE OF ACTION:
## NEGLIGENCE

86.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

87.   Upon information and belief, Defendant failed to use reasonable care in designing Mirena® in that they:

    a.   failed to properly and thoroughly test Mirena® before releasing the drug to market;

    b.   failed to properly and thoroughly analyze the data resulting from the premarketing tests of Mirena®;

    c.   failed to conduct sufficient post-market testing and surveillance of Mirena®;

    d.   designed, manufactured, marketed, advertised, distributed, and sold Mirena® to consumers, including Plaintiff, without an adequate

1    warning of the significant and dangerous risks of Mirena® and without

2    proper instructions to avoid the harm which could foreseeable occur as a

3    result of using the drug

4              e.      failed to exercise due care when advellising and promoting

5    Mirena®; and

6              f.      negligently continued to manufacture, market, advertise, and

7    distribute Mirena® after Defendants knew or should have known of its

8    adverse effects.

9         88.    A reasonable manufacturer would or should have known that its risks

10   created by Mirena® are unreasonably greater than that of other contraceptives and

11   that Mirena® has no clinical benefit over such other contraceptives that compensates

12   in whole or part for the increased risk.

13        89.    As a direct and proximate result of one or more of these wrongful acts

14   or omissions of the Defendant, Plaintiffs suffered profound injuries, required medical

15   treatment, and incurred and continue to incur medical and hospital expenses.

16        WHEREFORE, Plaintiffs demand judgment against Defendant for

17   compensatory, statutory and punitive damages, together with interest, costs of suit,

18   attorneys' fees and all such other relief as the Court deems appropriate pursuant to

19   the common law and statutory law.

20

21                       **FOURTH CAUSE OF ACTION:**

22                           **FAILURE TO WARN**

23        90.    Plaintiffs incorporate by reference all other paragraphs of this complaint

24   as if fully set forth herein, and further allege as follows:

25        91.    Mirena® is a defective and therefore an unreasonably dangerous

26   product, because its labeling fails to adequately warn consumers and prescribers of,

27   among other things, the risk of migration of the product post-insertion, uterine

28   perforation post-insertion, or the possibility that device complications such as

---

15

COMPLAINT

migration and perforation may cause abscesses, infections require surgery for removal and/or may necessitate hysterectomy, oophorectomy, and other complications.

92.    Defendants manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold and otherwise released into the stream of commerce the pharmaceutical, Mirena®, and in the course of same, directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Mirena®.

93.    Mirena® was under the exclusive control of Defendant and was unaccompanied by appropriate warnings regarding all of the risks associated with its use. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer or physicians. The promotional activities of Defendant further diluted or minimized the warnings given with the product.

94.    Defendant downplayed the serious and dangerous side effects of Mirena® to encourage sales of the product; consequently, Defendant placed its profits above its customers' safety.

95.    Mirena® was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert Plaintiffs to the dangerous risks and reactions associated with it. Even though Defendants knew or should have known of the risks associated with Mirena®, they still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

96.    Plaintiffs used Mirena® as intended and as indicated by the package labeling or in a reasonably foreseeable manner.

97.    Plaintiffs could not have discovered any defect in Mirena® through the exercise of reasonable care.

16

98.   Defendant, as manufactures of pharmaceutical drugs, are held to the level of knowledge of an expert in the field and, further, Defendant had knowledge of the dangerous risk and side effects of Mirena®.

99.   Plaintiffs did not have the same knowledge as Defendant and no adequate warning was communicated to her physician(s).

100.   Defendant had a continuing duty to warn consumers, including Plaintiffs and each of their physicians, and the medical community of the dangers associated with Mirena®, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, Defendant breached their duty.

101.   Although Defendant knew, or were reckless in not knowing, of the defective nature of Mirena®, they continued to manufacture, design, formulate, test, package, label, produce, create, made, construct, assemble, market, advertise, distribute and sell Mirena® without providing adequate warnings and instructions concerning the use of Mirena® so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Mirena®.

102.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiffs suffered profound injuries, required medical treatment, and incurred and continue to incur medical and hospital expenses.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FIFTH CAUSE OF ACTION:
## STRICT LIABILITY

103.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

1       104.   Defendant is a manufacturer and/or supplier of Mirena® and are strictly

2   liable to Plaintiffs for manufacturing, designing, formulating, testing, packaging,

3   labeling, producing, creating, making, constructing, assembling, marketing,

4   advertising, distributing, selling and placing Mirena® into the stream of commerce.

5       105.   Mirena®, manufactured and/or supplied by Defendant, was defective in

6   design or formulation in that when it left the hands of the manufacturer and/or

7   suppliers, it was unreasonably dangerous. It was more dangerous than an ordinary

8   consumer would expect and more dangerous than other contraceptives.

9       106.   Mirena® was defective in design or formulation in that, when it left the

10  hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the

11  benefits associated with the design or formulation.

12      107.   Mirena® was also defective due to inadequate warnings or instructions

13  because the manufacturer knew or should have known that Mirena® created, among

14  other things, a risk of perforation and migration and associated infections or

15  conditions and the Defendants failed to adequately warn of these risks.

16      108.   Mirena® was defective due to inadequate pre-marketing testing.

17      109.   Defendant failed to provide adequate initial warnings and post-

18  marketing warnings or instructions after the manufacturer and/or supplier knew or

19  should have known of the extreme risks associated with Mirena® and continue to

20  promote Mirena® in the absence of those adequate warnings.

21      110.   As a direct and proximate result of one or more of these wrongful acts

22  or omissions of the Defendant, Plaintiffs suffered profound injuries, required medical

23  treatment, and incurred and continue to incur medical and hospital expenses.

24      WHEREFORE, Plaintiffs demand judgment against Defendant for

25  compensatory, statutory and punitive damages, together with interest, costs of suit,

26  attorneys' fees and all suck other relief as the Court deems appropriate pursuant to

27  the common law and statutory law.

28

## SIXTH CAUSE OF ACTION:
## BREACH OF IMPLIED WARRANTY

111.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

112.   Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold Mirena® as safe for use by the public at large, including Plaintiff, who purchased Mirena®. Defendants knew the use for which their product was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

113.   Plaintiffs reasonably relied on the skill and judgment of the Defendant, and as such their implied warranty, in using Mirena®.

114.   Contrary to same, Mirena® was not of merchantable quality or safe or for its intended use, because it is unreasonably dangerous and unfit for the ordinary purpose for which it was used.

115.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiffs suffered profound injuries, required medical treatment, and incurred and continue to incur medical and hospital expenses.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.


## SEVENTH CAUSE OF ACTION:
## BREACH OF EXPRESS WARRANTY

116.   Plaintiffs incorporate by reference all other paragraphs complaint as if fully set forth herein, and further allege as follows:

117.   The aforementioned designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena® were expressly warranted to be safe by Defendant for Plaintiffs and members of the public generally.  At the time of the making of these express warranties, Defendant had knowledge of the foreseeable purposes for which Mirena® was to be used and Defendant warranted Mirena® to be in all respects safe, effective and proper for such purposes.

118.   Mirena® does not conform to these express warranties and representations because Mirena® is not safe or effective and may produce serious side effects.

119.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiffs suffered profound injuries, required medical treatment and incurred medical and hospital expenses.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## EIGHTH CAUSE OF ACTION:
## NEGLIGENT MISREPRESENTATION

120.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

121.   Defendant, having undertaken the designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena®, owed a duty to provide accurate and complete information regarding Mirena®.

COMPLAINT

122.   Defendant falsely represented to Plaintiffs that Mirena® was a safe and effective contraceptive option. The representations by Defendant were in fact false, as Mirena® is not safe and is dangerous to the health of its users.

123.   At the time the aforesaid representations were made, Defendant concealed from Plaintiffs and their health care providers, information about the propensity of Mirena® to cause great harm. Defendant negligently misrepresented claims regarding the safety and efficacy of Mirena® despite the lack of information regarding same.

124.   These misrepresentations were made by Defendant with the intent to induce Plaintiffs to use Mirena®, which caused each of their injuries.

125.   At the time of Defendant's misrepresentations and omissions, Plaintiffs were ignorant of the falsity of these statements and reasonably believed them to be true.

126.   Defendant breached their duties to Plaintiffs by providing false, incomplete and/or misleading information regarding their product.  Plaintiffs reasonably believed Defendant's representations and reasonably relied on the accuracy of those representations when agreeing to treatment with Mirena®.

127.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiffs suffered profound injuries, required medical treatment, and incurred and continue to incur medical and hospital expenses.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## NINTH CAUSE OF ACTION:

## FRAUDULENT MISREPRESENTATION

128.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

129.   Defendant, having undertaken the designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena® described herein, owed a duty to provide accurate and complete information regarding Mirena®.

130.   Defendant fraudulently misrepresented material facts and information regarding Mirena® including, but not limited to, its propensity to cause serious physical harm.

131.   At the time of Defendant's fraudulent misrepresentations and omissions, Plaintiffs were unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

132.   Defendant knew this information to be false, incomplete and misleading.

133.   Defendant intended to deceive and mislead Plaintiffs so that they might rely on these fraudulent misrepresentations.

134.   Plaintiffs had a right to rely on and did reasonably rely upon Defendant's deceptive, inaccurate and fraudulent misrepresentations.

135.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff s profound injuries, required medical treatment, and incurred and continue to incur medical and hospital expenses.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## TENTH CAUSE OF ACTION:

## FRAUD BY CONCEALMENT

136.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

137.   Defendant had a duty and obligation to disclose to Plaintiffs that Mirena® was dangerous and likely to cause serious health consequences to users when used as prescribed.

138.   Defendant intentionally, willfully, and maliciously concealed and/or suppressed the facts set forth above from Plaintiffs with the intent to defraud her as herein alleged.

139.   Neither Plaintiffs nor any of their physicians were aware of the facts set forth above, and had they been aware of said facts would not have prescribed this product.

140.   As a proximate result of the concealment and/or suppression of the facts set forth above, Plaintiffs have proximately sustained damage, as set forth herein.

141.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiffs have suffered profound injuries, required medical treatment, and incurred and continue to incur medical and hospital expenses.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## REQUEST FOR PUNITIVE DAMAGES

142.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

143.   At all times relevant herein, Defendant:

    a.   knew that Mirena® was dangerous and ineffective;

      b.    concealed the dangers and health risks from Plaintiffs, physicians, pharmacists, other medical providers, the FDA, and the public at large;

      c.    made misrepresentations to Plaintiffs, her physicians, pharmacists, hospitals and medical providers and the public in general as previously stated herein as to the safety and efficacy of Mirena®; and

      d.    with full knowledge the health risks associated with Mirena® and without adequate warnings of the same, manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold Mirena® for routine use.

144.   Defendant, by and through officers, directors, managing agents, authorized sales representatives, employees and/or other agents who engaged in malicious, fraudulent and oppressive conduct towards Plaintiffs and the public, acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiffs and the general public.

145.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiffs suffered profound injuries that required medical treatment and incurred medical and hospital expenses, for which Plaintiffs have become liable.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

COMPLAINT

1

## PRAYER FOR RELIEF

2          Plaintiffs demand judgment against Defendant for compensatory, and punitive

3   damages, together with interest, costs of suit, attorneys' fees and all such other relief

4   as the Court deems appropriate pursuant to the common law and statutory law.

5

6

7   DATED:       November 26, 2013        KABATECK BROWN KELLNER LLP

8

9

10                                        By_____

11                                              Lina B. Melidonian
                                              Attorneys for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all Counts and as to all issues.

Respectfully submitted,

DATED:    November 26, 2013          KABATECK BROWN KELLNER LLP

By _____
          Lina B. Melidonian
          Attorneys for Plaintiffs

COMPLAINT

CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

CELESTE PLUCHA, et al.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

BAYER HEALTHCARE PHARMACEUTICALS, INC.

**(b) County of Residence of First Listed Plaintiff** _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant** Passaic County
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 1367  Defective Manufacturing, Breach of Express Warranty, Fraudulent Misrepresentation

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:

CV13-8809

CV-71 (11/13)                    CIVIL COVER SHEET                    Page 1 of 3

CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No | [ ] Los Angeles | Western |
| If "no, " go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes   [ ] No | [ ] Los Angeles | [ ] Los Angeles | Western |
| If "no, " go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [ ] | [ ] | [X] |
| Indicate the location in which a majority of claims arose: | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |

**C.1.  Is either of the following true?  If so, check the one that applies:**

[ ] 2 or more answers in Column C

[ ] only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

[ ] 2 or more answers in Column D

[ ] only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____  DATE: November 27, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Consuelo B. Marshall _____ and the assigned Magistrate Judge is _____ Patrick J. Walsh _____ .

The case number on all documents filed with the Court should read as follows:

**2:13CV8809 CBM PJWx**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

November 27, 2013
Date

By  J.Prado
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---